IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

EP HENRY CORP.,

                Plaintiff,

      v.

CAMBRIDGE PAVERS, INC.,

                Defendant.

HONORABLE JEROME B. SIMANDLE

Civil Action No.
17-1538 (JBS/KMW)

**OPINION**

---

APPEARANCES:

Craig S. Hilliard, Esq.
Gene Markin, Esq.
STARK & STARK, PC
Princeton Pike Corporate Center
993 Lenox Drive – Building Two
PO Box 5315
Princeton, NJ 08543
    Attorneys for Plaintiff

John Michael Agnello, Esq.
Christopher John Buggy, Esq.
Melissa E. Flax, Esq.
CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC
5 Becker Farm Road
Roseland, NJ 07068
    Attorneys for Defendant

**SIMANDLE**, District Judge:

## I.  INTRODUCTION

On January 13, 2017, Plaintiff EP Henry Corporation ("EP Henry" or "Plaintiff") filed a complaint against its competitor, Defendant Cambridge Pavers, Inc. ("Cambridge" or "Defendant"). [Docket Item 8.] The action alleges that Cambridge made and

continues to make misleading or false statements about the
quality of its "ArmorTec" pavers, and it has seven counts: (1)
false advertising; (2) deceptive marketing; (3) negligent
misrepresentation; (4) unfair competition; (5) common law fraud;
(6) declaratory judgment; and (7) violation of § 43(a) of the
Lanham Act. (See generally Compl.)

The matter is presently before the Court on Defendant's
motion to dismiss the complaint in its entirety because the
phrases and slogans used in Cambridge's advertising constitute
non-actionable "puffery" or, in the alternative, to dismiss each
of the seven counts individually as a matter of law. [Docket
Item 8.] The principal issues concern whether Defendant's
advertising claims are non-actionable as mere puffery and
whether New Jersey law and the Lanham Act provide a remedy for a
competitor claiming injury to sales and reputation by false
advertising. For the reasons explained herein, the motion will
be granted in part and denied in part: Counts One through Five
will be dismissed with prejudice and Count Six will be dismissed
without prejudice, while Count Seven will stand against
Defendant; the case will go forward under § 43(a) of the Lanham
Act.

## II. BACKGROUND[1]

### A. Factual Background

EP Henry and Cambridge are both New Jersey businesses engaged in selling concrete pavingstone products throughout New Jersey and the rest of the country. (Compl. at ¶¶ 1-3.) Cambridge markets and sells a line of pavingstone products under the trademark "ArmorTec." (Id. at ¶ 4.) Through various marketing devices, including television commercials and an online brochure, Cambridge represents or has represented to potential customers that its Armortec pavers are unique and

---

[1] The Court notes that Plaintiff raised a number of new factual allegations in its Opposition Brief, including several exhibits attached thereto, which were not referenced in the complaint.

In ruling on a Rule 12(b)(6) motion to dismiss, a district court may not consider matters extraneous to the pleading. See In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir.1997) (holding that a district court, in ruling on a motion to dismiss, should not have considered information from the brief supporting the motion to dismiss); see also City of Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir.2009) ("When deciding a motion to dismiss, it is usual practice for a court to consider only the allegations contained in the complaint, exhibits contained in the complaint and matters of public record."). Rather, the Court may only consider a "document integral to or explicitly relied upon in the complaint," or an "undisputedly authentic document" if such document forms the predicate for the complaint. In re Rockefeller Ctr. Props., Inc., Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999) (citations and emphases omitted).

To the extent Plaintiff submitted materials extraneous to the pleading, the Court will disregard such materials for purposes of this motion. Of course, Plaintiff is free to rely upon such materials in a future motion for summary judgment if admissible.

superior to other pavers. In a 2014 commercial, for example, Cambridge's CEO and Founder, Charles H. Gamarekian, claims that "only Cambridge pavingstones have ArmorTec - a unique process that guarantees the color will never fade, backed by our fully transferable, lifetime guarantee." (Exhibit 5 to Def. Br.)

At issue in this case are several phrases and slogans Cambridge uses or has used to advertise its ArmorTec pavers. These advertising phrases and slogans include claims that:

- ArmorTec pavers will "always look like new." (Id. at ¶ 8.)

- ArmorTec pavers will "look like new forever." (Id. at ¶ 10.)[2]

- With ArmorTec pavers, "the color will never fade." (Id. at ¶¶ 13-14.)

According to EP Henry, "Cambridge's false and deceptive conduct had caused consumers to make purchasing decisions based on Cambridge's literally false and/or misleading representations about the capabilities of its ArmorTec pavers." (Id. at ¶ 18.) For example, EP Henry alleges, "[c]onsumers have reported to EP Henry distributors that they were misled by Cambridge's advertising claims and purchased Cambridge pavingstones based on

---

[2] Cambridge applied for, and was granted, two federal trademark registrations on the mark "They'll Look Like New Forever." (Compl. at ¶ 10.) This phrase is part of Cambridge's slogan and tagline, and was used as part of the Cambridge jingle used in TV commercials through 2016, as well as in the "on hold" music when a telephone caller contacts Cambridge's corporate offices. (Def. Br. at 3-4.)

those misleading statements, only to later discover that the
Cambridge pavingstones did not continue to look like new
following [the] purchase, and were not 'fade-proof.'" (Id. at ¶
19.) EP Henry further alleges that Cambridge's claims are "false
and misleading[,] . . . have damaged EP Henry's competitive
position in the marketplace, [] have caused EP Henry to lose
sales and reputation[,] . . . and have caused and continue to
cause commercial harm to [EP Henry]." (Id. at ¶¶ 17, 20.) At
various points in its seven-count complaint, EP Henry requests
the following relief: compensatory damages; consequential and
incidental damages; punitive damages; preliminary and permanent
injunctive relief; a declaratory judgment; reasonable attorney's
fees, pre-judgment interest, and costs of suit.

**B. Procedural History**

On January 13, 2017, EP Henry filed the seven-count
complaint against Cambridge in the Superior Court of New Jersey,
Law Division, Gloucester County. [Docket Item 8.] On March 7,
2017, Cambridge removed to federal court pursuant to 28 U.S.C.
§§ 1331 and 1441(a). [Docket Item 1.] On March 24, 2017,
Defendant filed a motion to dismiss the Complaint pursuant to
Fed. R. Civ. P. 12(b)(6). [Docket Item 8.] The Court heard oral
argument on October 23, 2017.

## III. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

Additionally, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." Phillips v. County of Allegheny, 515 F.3d 224, 236 (3d Cir.2008).

## IV. Discussion

### A.    Puffery

Cambridge argues that the entire complaint should be dismissed because phrases like "they'll look like new forever" and "the color will never fade" are, as a matter of law, non-

actionable puffery. (Def. Br. at 7-15.) In response, EP Henry argues that these phrases are not puffery because, when viewed in context, they are "statements of fact" that can be objectively verified as literally false. (Pl. Br. at 8-16.)

"Puffery is an exaggeration or overstatement expressed in broad, vague, and commendatory language." Castrol Inc. v. Pennzoil Co., 987 F.2d 939, 945 (3d Cir.1993). "[S]tatements that can be categorized as 'puffery' or 'vague and ill-defined opinions' are not assurances of fact and thus do not constitute misrepresentations." CPS MedManagement LLC v. Bergen Reg'l Med. Ctr., L.P., 940 F. Supp. 2d 141, 159 (D.N.J. 2013) (citation omitted). Puffery "is distinguishable from misdescriptions or false representations of specific characteristics of a product" and, "[a]s such, it is not actionable." Castrol, 987 F.2d at 945. Under New Jersey law, statements of puffery are, "simply put, not statements of fact. . . ." N.J. Citizen Action v. Schering-Plough Corp., 367 N.J. Super. 8, 14 (App. Div. 2003).

A vague or exaggerated statement of opinion will, in certain circumstances, constitute non-actionable puffery. For example, in Pizza Hut v. Papa John's Intern., Inc., the Fifth Circuit found Papa John's slogan "Better Ingredients. Better Pizza." to be "a general statement of opinion regarding the superiority of its product over all others," which, standing alone, constituted non-

7

actionable puffery. 227 F.3d 489, 498-99 (5th Cir. 2000). But, as
the Fifth Circuit also observed, that same statement was no longer
puffery when viewed in the context of a misleading ad campaign
about Papa John's sauce and dough. In that context, the slogan
was "expanded and given additional meaning" to the point where
the slogan, itself, "is no longer mere opinion, but rather takes
on the characteristics of a statement of fact." Id. at 501-02.
Thus, context matters.

The Court does not doubt that, if a potential buyer of
Cambridge pavingstones only heard phrases like "our pavers will
always look like new" or "with our pavingstones, the color will
never fade", he or she very well might disregard such statements
as exaggerated boasting or opinions (i.e., puffery). Indeed, as
Defendant correctly identifies, courts around the country
regularly find that, standing alone, language suggesting
perpetuity or an indefinite period of time constitutes non-
actionable puffery.[3] But Plaintiff alleges that Cambridge's
advertising campaign does more because it touts the allegedly
breakthrough technology, not just the results. Through various
marketing devices, including those attached as exhibits to

---

[3] For a sampling of cases finding mere puffery in advertising
containing statements of future expectation or probability, see,
e.g., In re Toshiba, 2009 WL 2940081, at *10 (D.N.J. Sept. 11,
2009); Cooper Hosiery Mills, Inc. v. Honeywell Int'l Inc., 2007
WL 3243854, at *3 (D.N.J. Nov. 1, 2007); Adamson v. Ortho-McNeil
Pharma. Inc., 463 F. Supp. 2d 496, 503 (D.N.J. 2006).

Defendant's brief (see Exhibits 4, 5, and 6 to Def. Br.),
Cambridge tells potential customers that ArmorTec is a "unique
process," which only Cambridge uses. Often in the same or
following sentence, Cambridge then represents to these potential
customers that its ArmorTec pavers will "look like new forever"
or that, with ArmorTec pavers, "the color will never fade." (See
id.; see also Compl. at ¶¶ 8, 9, 13-14.)

Viewed in conjunction with Cambridge's representations
about the uniqueness of its proprietary ArmorTec technology, it
is plausible that a potential customer could reasonably come to
the conclusion that Cambridge is not puffing, but has actually
found the "secret sauce" to enable pavingstones to "look like
new forever" or ensure that "the color will never fade." Thus,
the Court cannot find that, as a matter of law, Plaintiff's
allegations about Cambridge's statements constitute non-
actionable puffery. Accordingly, the Court must decline to
dismiss the complaint on the overall premise that Cambridge's
claims about its ArmorTec technology are non-actionable puffery.

**B.    Counts One and Two: False Advertising and Deceptive
       Marketing, Recast as New Jersey Consumer Fraud Act**

Cambridge next argues that, assuming the phrases at issue
in this case are not puffery, Counts One (false advertising) and
Two (deceptive marketing) should be dismissed because neither
are causes of action recognized under New Jersey law. (Def. Br.

at 15-17.) In response, EP Henry argues that the New Jersey

Consumer Fraud Act ("NJCFA") provides a private cause of action

for false advertising (Count One) and deceptive marketing (Count

Two) for "[a]ny person who suffers any ascertainable loss . . .

real or personal" as a result of "fraudulent practices in the

market place." (Pl. Br. at 16-17.)

Up front, the Court notes that EP Henry did not refer to

the NJCFA anywhere in its complaint and instead pleaded claims

for common law false advertising and deceptive advertising. (See

generally Compl.; see also Def. Rep. Br. at 6.) Moreover, EP

Henry's brief in opposition does not support its claims for

common law false advertising and deceptive advertising.

Nevertheless, assuming for purposes of Defendant's motion to

dismiss that EP Henry's claims in Counts One and Two were

restated to arise out of the NJCFA,[4] EP Henry lacks standing to

bring such claims.

---

[4] In other words, consistent with the parties' briefs and oral
arguments, the Court assumes that EP Henry seeks to amend Counts
One and Two to assert NJCFA claims as a competitor. The issue
becomes whether, if the currently-pled common law claims in
Counts One and Two were recast as NJCFA claims, the effort to
amend would be futile.

This procedure saves a subsequent round of dispositive motion
practice addressed to new NJCFA claims in an efficient manner,
consistent with obligations of counsel and the Court under the
recent amendment to Fed. R. Civ. P. 1. Rule 1 provides in
relevant part: "[These rules] should be construed, administered,
and employed by the court and the parties to secure the just,

Plaintiff cites several cases for the general proposition that commercial competitors have standing to bring claims under the NJCFA. (See Pl. Opp. Br. at 18-19.)[5]

As several courts in this District have since made clear, the NJCFA only grants standing to consumers and commercial competitors "who are acting as consumers" or who are involved in a "consumer transaction," but not to commercial competitors generally. See Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC, 2017 WL 931712, at *2-3 (D.N.J. Mar. 9, 2017); Interlink Prods. Int'l, Inc. v. F & W Trading LLC, 2016 WL 1260713, at *10 (D.N.J. Mar. 31, 2016); Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH, 2010 WL 5239238, at *9-11 (D.N.J. Dec. 16, 2010); Holt's Co. v. Hoboken Cigars, LLC, 2010 WL 4687843, at *2 (D.N.J. Nov. 10, 2010); see also Tris Pharma, Inc. v. UCB Mfg., Inc., 2016 WL 4506129, at *5 (N.J. Super. App.

---

speedy, and inexpensive determination of every action and proceeding."

[5] The Court notes that most of the cases Plaintiff cites for the notion that commercial competitors generally have standing under the NJCFA, including 800-JR Cigar, Inc. v. GoTo.com, Inc., 437 F. Supp. 2d 273 (D.N.J. 2006), primarily rely upon a New Jersey Chancery Division case, Feiler v. N.J. Dental Ass'n, 191 N.J. Super. 426 (Ch. Div. 1983). As Judge Wolfson explained in Church & Dwight Co., Inc. v. SPD Swiss Precision Diagnostics, GmBH, 2010 WL 5239238, at *9-11 (D.N.J. Dec. 16, 2010), Feiler involved a state law claim for unfair competition, rather than a claim under the NJCFA. Accordingly, the Court is not persuaded that Feiler or those cases relying upon Feiler lend support to Plaintiff's position that a commercial competitor has standing to sue under the NJCFA.

Div. Aug. 29, 2016); Papergraphics Int'l, Inc. v. Correa, 389
N.J. Super. 8, 13-15 (N.J. Super. App. Div. 2006). Thus, New
Jersey's Consumer Fraud Act does not confer standing on all
direct commercial competitors.

Here, EP Henry clearly claims that it was harmed by
Cambridge's alleged misstatements as a direct commercial
competitor, rather than as a commercial competitor who was
acting as a consumer or as a competitor involved in a consumer
transaction. (See Compl. at ¶¶ 20, 30, 31, 35, 36.) For the
reasons discussed above, any attempt to restate Counts One and
Two as NJCFA claims of a competitor that is not a consumer of
Cambridge's products would be futile. Accordingly, Counts One
and Two will be dismissed with prejudice.

**C.      Counts Three and Five: Negligent Misrepresentation and Common Law Fraud**

Cambridge also argues that Counts Three and Five should be
dismissed because EP Henry "has not pled reliance – nor can it."
(Def. Br. at 18.) In the complaint, EP Henry alleges that
potential customers and purchasers of Cambridge "reasonably rely
on [Cambridge's] statements to their detriment in deciding to
purchase Cambridge products over those of another manufacturer,
such as EP Henry." (Compl. at ¶ 62; see also id. at ¶ 42.) In
its opposition brief, EP Henry additionally argues it "has
relied on Cambridge's misrepresentations in formulating its own

advertising campaigns and changing its own product offerings to compete with Cambridge." (Pl. Opp. Br. at 19-20.)

Under New Jersey law, negligent misrepresentation requires a plaintiff to demonstrate that "the plaintiff justifiably relied on the information." EUSA-Allied Acquisition Corp. v. Teamsters Pension Tr. Fund of Philadelphia & Vicinity, 2012 WL 1033012, at *7 (D.N.J. Mar. 26, 2012) (citing Karu v. Feldman, 119 N.J. 135, 146-47 (1990)). Similarly, New Jersey's common-law tort for fraud requires "reasonable reliance thereon by the other person." Scopia Mortg. Corp. v. Greentree Mortg. Co., L.P., 233 F. Supp. 2d 625, 630 (D.N.J. 2000), aff'd, 56 F. App'x 93 (3d Cir. 2003) (citing Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997)). Notably, under New Jersey Law, the Supreme Court has held that "[t]he element of reliance is the same for fraud and negligent misrepresentation." Kaufman v. i-Stat Corp., 165 N.J. 94, 109 (2000).

Here, EP Henry fails to demonstrate that it reasonably or justifiably relied upon any of Cambridge's alleged misstatements. To the extent EP Henry argues that hypothetical customers relied on Cambridge's alleged misstatements in deciding to purchase Cambridge products over those of another manufacturer, EP Henry lacks standing to bring suit on their behalf. See Barows v. Chase Manhattan Morg. Corp., 465 F. Supp. 2d 347, 366-68 (D.N.J. 2006); Conte Bros. Auto., Inc. v. Quaker

State-Slick 50, Inc., 992 F. Supp. 709, 716 (D.N.J. 1998). EP Henry further argues in its moving papers that it reformulated its advertising campaign in response to Cambridge's alleged misrepresentations. (Pl. Opp. Br. at 19-20.) But EP Henry does not claim that it actually relied upon the substance of Cambridge's alleged misstatements in doing so. In other words, EP Henry does not allege it believed the veracity of Cambridge's claims that the ArmorTec manufacturing process created pavers with superior color retention. Since EP Henry cannot show it reasonably or justifiably relied on any of Cambridge's alleged misstatements, Counts Three and Five will also be dismissed with prejudice.

D.    **Count Four: Unfair Practices**

Cambridge next argues that Count Four (unfair competition) should be dismissed because "unfair competition based on false advertising" is not a cause of action recognized under New Jersey law. (Def. Br. at 19-22.) EP Henry counters that "the essence of [New Jersey's] law of unfair competition is fair play" and "Cambridge's use of false, misleading statements about the ever-lasting colors and fade-proof qualities of its pavers puts EP Henry . . . at an unfair competitive disadvantage." (Pl. Opp. Br. at 21.)

New Jersey's common law of unfair competition "is an amorphous area of jurisprudence [that] knows of no clear

14

boundaries." <u>Duffy v. Charles Schwab & Co. Inc.</u>, 123 F. Supp. 2d
802, 815 (D.N.J. 2000) (quoting <u>N.J. Optometric Ass'n v.</u>
<u>Hillman-Kohan Eyeglasses, Inc.</u>, 144 N.J. Super. 411, 427 (Ch.
Div. 1976)). "Nevertheless, the common law of unfair competition
is not completely boundless . . . and most cases of unfair
competition encompass one of two torts: passing off one's goods
or services as those of another and unprivileged imitation."
<u>Wellness Pub. v. Barefoot</u>, 2008 WL 108889, at *20 (D.N.J. Jan.
9, 2008). In addition to claims of "passing off" goods or
services and imitation, New Jersey courts have recognized a
third tort covered by the common law of unfair competition for
tortious interference. <u>See</u> <u>e.g.</u>, <u>Nat'l Auto Div., LLC v.</u>
<u>Collector's Alliance, Inc.</u>, 2017 WL 410241, at *4 (N.J. Super.
App. Div. Jan. 31, 2017). Notably, the Appellate Division
recently observed, "[t]here is no New Jersey precedent which
supports [plaintiff's] assertion that the common law tort of
unfair competition encompasses . . . false advertising." <u>Tris</u>
<u>Pharma</u>, 2016 WL 4506129 at *5.

Under New Jersey's common law, the tort of unjust
competition is, thus far, limited to: (1) the "passing off" of
goods or services; (2) unprivileged imitation; and (3) tortious
interference. EP Henry's claims of false advertising do not fall
into any of these three categories and the Court declines EP
Henry's invitation to create a fourth. Generally, it is not the

15

province of the federal court to expand or contract the precepts of state law that it must apply. Accordingly, Count Four will be dismissed with prejudice.

### E.   Count Six: Declaratory Judgment

Cambridge argues that, if the case progresses beyond the motion to dismiss, "the issues for which Plaintiff seeks declaratory relief can be addressed as part of the adjudication of any remaining substantive claims, if there is a favorable outcome on any of those claims." (Def. Br. at 23.) Accordingly, Cambridge maintains that Count Six should be dismissed with prejudice. (Id.) In its opposition brief, EP Henry argued that, "because monetary damages may not adequately compensate Plaintiff for Cambridge's misconduct . . . declaratory relief would be necessary and appropriate." (Pl. Opp. Br. at 22.) At oral argument, however, Plaintiff conceded that Count Six should be dismissed without prejudice because it is superfluous and declaratory relief would be available whether it is pled or not. Accordingly, the Court will dismiss Count Six without prejudice.

### F.   Count Seven: Violation of Lanham Act § 43(a)(1)(B)

Finally, Cambridge argues that Count Seven should be dismissed for lack of standing because: (1) EP Henry's interest does not fall within the zone of interests protected by the Lanham Act; and (2) EP Henry's injuries were not proximately caused by the violation of the Lanham Act alleged. (Def. Br. at

24-30.) In response, EP Henry argues that, "[a]s Cambridge's biggest competitor, EP Henry is clearly a plaintiff Congress intended to protect under § 1125(a) of the Lanham Act in accord with its goal of protecting persons engaged in commerce within the control of Congress against unfair competition." (Pl. Opp. Br. at 26) (internal citation and quotation marks omitted). EP Henry further avers that "[d]iscovery will reveal specific instances of consumers choosing Cambridge pavers over those from EP Henry as a result of Cambridge's false promises about the everlasting look of its pavers," thereby establishing proximate causation. (Id. at 27.)

False advertising is prohibited under Section 43(a)(1)(B) of the Lanham Act, which reads in relevant part:

> (1) Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> ...
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(B).

To establish a Lanham Act claim based on false or misleading representations in commercial advertising a plaintiff must allege:

> 1) that the defendant has made false or misleading statements as to his own product or another's; 2) that there is actual deception or at least a tendency to deceive a substantial portion of the intended audience; 3) that the deception is material in that it is likely to influence purchasing decisions; 4) that the advertised goods traveled in interstate commerce; and 5) that there is a likelihood of injury to the plaintiff in terms of declining sales, loss of good will, etc.

Warner-Lambert Co. v. BreathAsure, Inc._, 204 F.3d 87, 91-92 (3d Cir. 2000). The plaintiff need not prove element two if the advertisement is false: "If an advertisement is literally false, the plaintiff does not have to prove actual consumer deception." Highmark, Inc. v. UPMC Health Plan, Inc._, 276 F.3d 160, 171 (3d Cir. 2001). As discussed below, the plaintiff must also show that it comes within the class of plaintiffs whom Congress authorized to sue under 15 U.S.C. § 1125(a). See Lexmark Int'l v. Static Control Components, Inc., 134 S. Ct. 1377 (2014).

Up front, the Court notes that the parties briefed the Lexmark issue as one of "standing." As the Supreme Court explained in Lexmark, the label of "prudential standing" in cases alleging a violation of the Lanham Act is "misleading" because the question at issue is whether the plaintiff "falls within the class of plaintiffs whom Congress has authorized to

18

sue under [the Lanham Act]," and not whether the plaintiff has "standing," in the traditional sense. Id. at 1387 (emphasis added). The Third Circuit has since said that "Lexmark strongly suggests that courts shouldn't link the zone-of-interests test to the doctrine of standing." Maher Terminals, LLC v. Port Auth. of N.Y. and N.J., 805 F.3d 98, 105-06 (3d Cir. 2015). Accordingly, this Court need only determine whether EP Henry is among the class of plaintiffs Congress authorized to sue under the Lanham Act.

Section 45 of the Lanham Act provides that "[t]he intent of [the Act] is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce [and] . . . to protect persons engaged in such commerce against unfair competition." 15 U.S.C. § 1127. Based on this language, the Lexmark Court held that, to state a claim for false advertising under the Lanham Act, "a plaintiff must allege an injury to a commercial interest in reputation or sales." Lexmark, 134 S. Ct. at 1390. The Court further explained that, under proximate causation principles, "a plaintiff suing under [the Lanham Act] must [also] show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." Id. at 1391.

Here, EP Henry claims that "[a]s a result of prospective customers' reliance on Cambridge's false statements, EP Henry has been damaged by and through loss of business, loss of potential customers, loss of reputation, and loss of revenue." (See Compl. at ¶ 43; see also id. at ¶¶ 17, 31, 71, 83.) While EP Henry acknowledges it "has not alleged a specific instance of a consumer choosing to purchase pavers from Cambridge over EP Henry because of Cambridge's false advertising statements" (Pl. Opp. Br. at 25), the Court finds that, at this pre-discovery stage, EP Henry has sufficiently pled that, as a direct competitor to Cambridge in the pavingstone industry, it has suffered harm to its reputation and sales by losing customers as a result of Cambridge's alleged misstatements. It is reasonable at the pleading stage to infer that: (1) these parties are competitors and that would-be customers of EP Henry could be attracted to the Cambridge product based on the allegedly false claims of superior ArmorTec technology; (2) a plaintiff under Section 43(a)(1)(B) of the Lanham Act is not required to prove its case at the Rule 12(b)(6) phase of the case; and (3) it is sufficient to state plausible grounds for its claim of injury to commercial interest in reputation or sales, and here Plaintiff has done so with respect to sales loss and harm to reputation. Of course, if Plaintiff is unable to uncover such evidence from third parties and through the course of discovery, Defendant may

be entitled to summary judgment. In the meantime, Count Seven will stand against Defendant because it states a claim under the Lanham Act as to which Plaintiff has standing.

## V.  CONCLUSION

For the reasons explained above, Defendant's motion will be granted in part and denied in part: Counts One through Five will be dismissed with prejudice; Count Six will be dismissed without prejudice; and the dismissal motion will be denied as to Count Seven. An accompanying Order will be entered.


**October 31, 2017**                    **s/ Jerome B. Simandle**
Date                                    JEROME B. SIMANDLE
                                        U.S. District Judge