IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| EP HENRY CORPORATION,<br><br>                              Plaintiff,<br><br>     v.<br><br>CAMBRIDGE PAVERS, INC.,<br><br>                             Defendant. | **Hon. Joseph H. Rodriguez**<br><br>Civil No. 17-1538 (JHR/KMW)<br><br>**OPINION** |

These matters come before the Court on Defendant Cambridge Pavers, Inc.'s Motion (Docket Item 62) for Summary Judgment and the parties' Joint Motion (Docket Item 82) to Seal various documents. For the reasons stated below, the Court will deny Defendants' Motion (Docket Item 62) for Summary Judgment and grant in part and conditionally deny in part the parties' Joint Motion (Docket Item 82) to Seal.

## I. **Factual and Procedural History**[1]

Plaintiff EP Henry Corporation ("EP Henry") and Defendant Cambridge Pavers, Inc. ("Cambridge") are New Jersey-based competitors in the industry of manufacturing concrete paving stones. EP Henry was formed in 1903 and Cambridge in 1995. In its advertising, Cambridge has used such phrases as "always look like new," "look like new

---

[1] The Court distills this undisputed version of events from the parties' statements of material facts, affidavits, and exhibits, and recounts them in the manner most favorable to the party opposing summary judgment — here, Plaintiff. The Court disregards, as it must, those portions of the parties' statements of material facts that lack citation to relevant record evidence (unless admitted by the opponent), contain improper legal argument or conclusions, or recite factual irrelevancies. See generally L. CIV. R. 56.1(a); see also Kemly v. Werner Co., 151 F. Supp. 3d. 496, 499 n.2 (D.N.J. 2015) (disregarding portions of the parties' statements of material facts on these grounds); Jones v. Sanko Steamship Co., Ltd., 148 F. Supp. 3d 374, 379 n.9 (D.N.J. 2015) (same).

forever," "color will never fade," and "skid and slip resistant." EP Henry alleges that those phrases, among others, constitute false advertising under the Lanham Act. (See Docket Item 70-1, ¶ 14.)

At some point in time, Cambridge began to use a jingle as part of its advertising efforts. The jingle ends with the phrase "they'll always look like new."[2] Cambridge alleges that it began using the phrase "They'll Look Like New Forever" in its advertising for its ArmorTec pavingstone products around 2000, and that it began to use language stating that the pavingstones' color would not fade around 2004. (Docket Item 63, ¶¶ 16-17.) Then, in 2006, Cambridge registered 2 trademarks. The first consisted of Cambridge's logo and the slogan "They'll Look Like New Forever," while the second consisted of Cambridge's logo with the slogan "They'll Look Like New Forever" and the words "with ArmorTec." (See Docket Item 63, ¶ 18.) According to the Trademark Registration Certificates from the U.S. Patent and Trademark Office, the two logos had been in use since the year 2000.

Cambridge alleges that it used those slogans for marketing purposes for more than 15 years prior to EP Henry filing the present suit in 2017. (Id. ¶ 20.) It also claims that it used language including "the rich color" and "will never fade" when advertising about ArmorTec pavingstones between 2004 and 2014. (Id. ¶ 21.) Finally, Cambridge alleges that beginning around 2009, it started including in its advertising language such as "skid-resistant" and "skid and slip resistant" when describing the ArmorTec pavingstones. (Id. ¶ 22.)

---

[2] The full lyrics of Cambridge's jingle are: "Cambridge pavingstones, the best pavingstones brand for you. Cambridge pavingstones – with ArmorTec – 'They'll Always Look Like New.'"

Cambridge alleges that at some point in late 2008 into early 2009, some of Cambridge's competitors, including Grinnell and Concrete Stone & Tile Corp. ("CST"), planned a meeting to discuss whether the above-mentioned language in Cambridge's marketing and advertising constituted false advertising. (Id. ¶¶ 23-25.) Cambridge claims that the meeting took place in April 2009 at Grinnell's offices, and that approximately 20-25 representatives from EP Henry, Capitol Pavers & Retaining Walls, Inc. ("Capitol"), Unilock New York, Inc. ("Unilock"), Techo-Bloc, Inc., CST, Grinnell, and Daron Northeast Inc. were all in attendance. (Id. ¶¶ 26-29.) The meeting apparently lasted approximately 60 to 90 minutes, with the attendees discussing the potentially "exaggerated advertising statements" that Cambridge had been using. (Id. ¶¶ 30-35.) Cambridge asserts that the attendees discussed the possibility of filing a lawsuit against Cambridge, but ultimately decided to table the issue until a second meeting. (Id. ¶ 34.)

Cambridge alleges that, before the second meeting, EP Henry expressed to a CST representative that it did not want to partake in the lawsuit. (Id. ¶ 36.) Cambridge claims that there was then a second meeting, approximately 3 to 4 weeks after the first one, in which the four competitors in attendance (Capitol, Grinnell, CST, and Unilock) decided against filing a lawsuit and in favor of instituting a proceeding before the National Advertising Division ("NAD") of the Council of Better Business Bureaus, Inc. (Id. ¶ 38-41.) In early June 2009, the attorney representing those four competitors filed a letter with NAD challenging some of the above-mentioned advertising claims made by Cambridge. (See id. ¶ 42.)[3]

---

[3] Cambridge relies on the Declarations of Grinnell's President, Craig Austin, and General Counsel, Jarrod C. Cofrancesco, for all above assertions about these meetings and their aftermath. Austin claims to have been at the April 2009 meeting, while

EP Henry denies that any of its representatives were present at the April 2009 meeting. (Docket Item 70-2, ¶ 6.) The parties agree that EP Henry was not one of the parties that filed the NAD case in 2009. Instead, EP Henry contends that it did not know about Cambridge's use of the alleged false advertising claims until EP Henry opened its distribution facility in Roxbury, New Jersey, in the summer of 2013. (Id. ¶ 10.) EP Henry states that the Roxbury facility represented its expansion into the North Jersey market, where Cambridge had a strong presence. (See id. ¶¶ 11, 16.) Upon opening that facility, EP Henry claims that North Jersey customers began to ask for Cambridge's ArmorTec products, citing Cambridge's advertising claims such as "they look like new forever" and "they would never fade." (Id. ¶ 14.) EP Henry claims that, prior to opening the Roxbury facility, it had been unaware of Cambridge's alleged false advertising claims because it had not encountered Cambridge directly in the marketplace, and thus had not been affected by the claims. (Id. ¶ 16.) Upon hearing customers' requests, though, EP Henry claims it launched an investigation into Cambridge's alleged false advertising claims. (Id. ¶ 17.) EP Henry contends that it was only at this point in time that it became aware of the details of the 2009 NAD case and, more generally, the alleged false advertising claims. (Id.)

In April 2014, EP Henry states that it submitted its own claim to the NAD to challenge Cambridge's continued use of the advertising claims "They'll Always Look Like New" and "Will Never Fade." (Id. ¶ 19.) The NAD issued a compliance report on July 7, 2014, which deemed Cambridge's advertising claims to be "unsupported" and took umbrage with Cambridge's continued use of the phrases. (See id. ¶¶ 20-22.) EP Henry

---

Cofrancesco was merely present at the offices on the day of the first meeting, but did not attend it.

claims that, nevertheless, Cambridge continued to use the unsupported language, at which point EP Henry created and distributed a brochure entitled "The Truth About Pavers: Cambridge Pavingstones with ArmorTec Exaggerations." (Id. ¶ 24.) EP Henry says it shared this brochure with market actors in order to inform the industry about Cambridge's alleged false advertising claims. (Id. ¶ 25.) In that brochure, EP Henry stated that Cambridge's use of the language at issue had been contested since 2009, in reference to the 2009 NAD case. (Id. ¶ 26.) Despite these efforts, EP Henry alleges that Cambridge did not discontinue using the alleged false advertising claims. (Id. ¶ 27.)[4]

Therefore, EP Henry commenced this litigation on January 13, 2017, by filing in Gloucester County Superior Court a seven-count complaint against Cambridge that included allegations that Cambridge had violated Section 43(a) of the Lanham Act by engaging in false advertising. (Docket Item 63, ¶ 7.) On March 7, 2017, Cambridge removed the case to this Court. (Docket Item 1.) On March 24, 2017, Cambridge filed a Motion (Docket Item 8) to Dismiss EP Henry's Complaint. On October 31, 2017, the late Honorable Jerome B. Simandle granted that Motion in part and denied it in part, ultimately dismissing all of the counts other than the Lanham Act count. (Docket Items 21, 22.)

Thereafter, Cambridge filed its Answer (Docket Item 26) to EP Henry's Complaint, in which Cambridge raised the affirmative defense of laches and counterclaimed that EP Henry had also violated the Lanham Act. On August 9, 2018, EP Henry filed its First Amended Complaint (Docket Item 50), which set forth a single

---

[4] EP Henry relies on the Declarations of EP Henry's President Eric Long, its Owner and CEO J.C. Henry, and CST's former General Manager Steve Guida for all assertions about how and when EP Henry came to learn about the alleged false advertising claims. Guida claims to have been present at the April 2009 meeting.

5

count alleging false advertising in violation of the Lanham Act. On August 22, 2018, Cambridge filed its Answer (Docket Item 51) to the First Amended Complaint, again raising laches as an affirmative defense.

On April 18, 2019, Cambridge filed a Motion (Docket Item 62) for Summary Judgment. On June 10, 2019,[5] EP Henry timely filed its Response. (Docket Item 70.) On July 8, 2019, Cambridge timely filed its Reply. (Docket Item 75.) Finally, on July 25, 2019, the parties filed a Joint Motion (Docket Item 82) to Seal the following documents, some in full and others in part: (1) Cambridge's Statement of Material Facts Not in Dispute (Docket Item 63); (2) Declaration of Charles H. Gamarekian (Docket Item 63-1); (3) Exhibit B to the Declaration of Charles H. Gamarekian (Docket Item 63-2); (4) Exhibit 7 to the Declaration of Melissa E. Flax (Docket Item 63-3); (5) Cambridge's Brief in Support of its Motion for Summary Judgment (Docket Item 63-4); (6) Cambridge's Reply Brief (Docket Item 75); (7) Exhibits A, H, and I to the Reply Declaration of Melissa E. Flax (Docket Item 75-1, 75-2, and 75-3); (8) Corrected Declaration of Charles H. Gamarekian (Docket Item 78); and (9) Exhibit B to the Corrected Declaration of Charles H. Gamareikian (Id.). The Court will address the two Motions in turn.

**II. Discussion**

The Court will first analyze Cambridge's Motion for Summary Judgment, before turning to the parties' Joint Motion to Seal.

**A. Cambridge's Motion for Summary Judgment**

---

[5] On April 30, 2019, the Court signed a Consent Order (Docket Item 66) adjourning Cambridge's Motion for Summary Judgment to July 16, 2019. Resultingly, EP Henry's deadline for responding to the Motion was June 10, 2019, and Cambridge's deadline for replying was July 8, 2019.

Cambridge's Motion for Summary Judgment is based entirely on the doctrine of laches. The Court will first lay out the standards for both summary judgment and laches. It will then apply the facts of this case to those standards in order to decide Cambridge's Motion.

### 1. Summary Judgment Standard

A court will grant a motion for summary judgment if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law. Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord FED. R. CIV. P. 56(c). Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts

7

showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the finder of fact. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### 2. Laches Standard and Analysis

There are two important issues that the Court must address with respect to Cambridge's laches argument. The first issue asks which party bears the burden of proving or disproving the elements of laches. Once that issue is resolved, the Court must then analyze whether that party has met that burden, for the purposes of this Motion. The Court will address each issue in turn.

#### a. Who bears the burden?

The doctrine of laches was developed by courts of equity in order "to protect defendants against 'unreasonable, prejudicial delay in commencing suit.'" SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC, 137 S. Ct. 954, 960 (2017) (quoting

Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663, 667 (2014)). Laches is an affirmative defense that "applies in those extraordinary cases where the plaintiff 'unreasonably delays in filing a suit,' and, as a result, causes 'unjust hardship' to the defendant." Petrella, 572 U.S. at 688 (Breyer, J., dissenting) (citations omitted) (first quoting Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 121 (2002); and then quoting Chirco v. Crosswinds Cmtys., Inc., 474 F.3d 227, 236 (6th Cir. 2007)). "Its purpose is to avoid 'inequity.'" Id. (quoting Galliher v. Cadwell, 145 U.S. 368, 373 (1892). The Third Circuit has noted that "[i]t is hornbook law that laches consists of two essential elements: (1) inexcusable delay in instituting suit, and (2) prejudice resulting to the defendant from such delay." Univ. of Pittsburgh v. Champion Prods., 686 F.2d 1040, 1044 (3d Cir. 1982)).

Because laches is an affirmative defense, it is the defendant's burden to establish the requisite elements of inexcusable delay and prejudice. EEOC v. Great Atl. & Pac. Tea Co., 735 F.2d 69, 80-81 (3d Cir. 1984). However, that burden shifts to the plaintiff in a case where the statutory limitations period that would bar legal relief has expired. Id. Section 43(a) claims under the Lanham Act, such as the claim in the present case, "are analogized to New Jersey's six-year fraud statute. N.J. Physicians United Reciprocal Exch. V. Privilege Underwriters, Inc., Civ. Action No. 15-6911 (FLW), 2016 WL 6126914, at *3 (D.N.J. Oct. 18, 2016) (collecting cases); see Beauty Time, Inc. v. VU Skin Sys., 118 F.3d 140, 143 (3d Cir. 1997). In the context of the Lanham Act, the statute of limitations begins to run when "the right to institute and maintain the suit arises." Beauty Time, 118 F.3d at 144 (citations and quotations omitted). Thus, "aggrieved parties must . . . bring their claim within [the applicable statute of limitations] when they learned or should

have learned, through the exercise of due diligence, that they have a cause of action." Id. at 148.

Thus, in order to determine which party bears the burden of proving or disproving the laches elements in this case, the Court must resolve whether Cambridge has shown in a manner sufficient to satisfy the summary judgment standard that EP Henry knew or should have known about its Lanham Act claims more than 6 years before EP Henry filed the present suit (i.e., before January 13, 2011). Cambridge argues that EP Henry had actual knowledge of the claims no later than 2009 or, in the alternative, that EP Henry should have known about them prior to 2011. The Court will address each argument in turn.

Cambridge's first argument is that EP Henry had actual knowledge of its Lanham Act claims no later than 2009 — more than 6 years before EP Henry filed this suit. Cambridge provides two bases for this argument. First, they claim that EP Henry representatives were present at the April 2009 meeting in which Cambridge's competitors discussed how to address Cambridge's alleged false advertising claims. However, EP Henry claims that none of its representatives were present at that meeting and that, in fact, it had no knowledge of the meeting whatsoever. Cambridge's second basis for this argument stems from EP Henry's 2015 brochure, which stated in part, "The accuracy of these claims has long been challenged. Since 2009, manufacturers including . . . EP Henry had brought complaints before [NAD]." Cambridge argues that this proves that EP Henry knew about the claims in 2009. EP Henry, on the other hand, contends that it only learned about the 2009 NAD complaint at some point in 2013, when it initiated its own investigation into Cambridge's advertising statements. (Docket Item 70-2, ¶ 16-17.) EP Henry explains that while other competitors brought the NAD

complaint in 2009, EP Henry brought its in 2014. As such, stating that Cambridge's claims have been challenged by numerous competitors including EP Henry since 2009 is not an admission that EP Henry knew about the claims in 2009, but merely that it learned about them in 2013.

Both of these bases clearly constitute genuine issues of material fact, which require a factfinder to gauge the credibility of the testimony that supports each sides' arguments. It is not within this Court's province to make such determinations. Because this genuine issue of material fact exists, Cambridge has not met the summary judgment standard in proving that EP Henry knew about these claims in 2009. Therefore, the burden will not be shifted onto EP Henry based on the argument that it had actual knowledge of the claims prior to January 13, 2011.

Cambridge next argues that EP Henry should have known about the claims prior to January 13, 2011. Cambridge points to its "widespread use" of the advertising phrases as well as the two trademarks it registered in 2006 as evidence that EP Henry should have known about the statements. Cambridge asserts that "competing pavingstone manufacturers routinely keep abreast of, are familiar with, and monitor the advertising and marketing activities of their competitors," therefore EP Henry should have known about the statements in question when Cambridge first started using them prior to 2011. Cambridge relies on a trademark infringement case in which the Northern District of California found that a competitor should have known of the Lanham Act violation when its competitor began "selling similar devices 'in the same geographic area under [a] remarkably similar name[].'" Fitbug Ltd. v. Fitbit, Inc., 78 F. Supp. 3d 1180, 1187-88 (N.D. Cal. 2015) (quoting Internet Specialties W., Inc. v. Milon-Digiorgio Enters., Inc., 559 F.3d 985, 990 (9th Cir. 2009)). Since EP Henry and Cambridge are competitors in

the pavingstone manufacturing industry, Cambridge concludes, EP Henry should have known about these claims in or about 1999.

Cambridge's argument on this point is insufficient to satisfy the summary judgment standard. <u>Fitbug</u> — which is merely nonbinding authority to begin with — is inapposite because it is factually distinguishable from the case at hand. In <u>Fitbug</u>, the plaintiff was immediately aware of the defendant's entry into the market. <u>Id.</u> at *1186. Representatives of the plaintiff acknowledged the defendant as a competitor whose product was a "total ripoff" that appeared to do the same functions as the plaintiff's product. <u>Id.</u> at *1186-87. The plaintiff long contemplated taking legal action against the defendant, and the plaintiff's Chief Marketing Officer even stated that the defendant "could cause confusion in the classic trademark sense." <u>Id.</u> The Court found that statement in particular to be "the crucial issue for determining when [the plaintiff] knew or should have known of its potential cause of action." <u>Id.</u> at *1187.

The same facts are not present in the case at hand. Rather, EP Henry has argued that it was unaware of the statements at issue because, in essence, Cambridge was not its direct competitor and the two companies were not operating in the same market until 2013. It is reasonable for the Court to infer that pavingstone manufacturers that are not in competition with one another do not keep abreast of each other's advertising to the extent that would be required for the Court to hold that EP Henry should have known about these claims prior to January 13, 2011. This is precisely why EP Henry is arguing that it should not have known about Cambridge's claims prior to that date. Because this is a motion for summary judgment, the Court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party — here, EP Henry. As such, the Court holds that, for the purposes of this Motion, the

circumstances prior to EP Henry opening the Roxbury facility are not such that EP Henry should have known about the alleged falsity of Cambridge's advertising statements prior to January 13, 2011.

Because Cambridge has not met the summary judgment standard in arguing that EP Henry knew or should have known about Cambridge's advertising claims prior to January 13, 2011, the Court cannot conclude that the 6-year statute of limitations period expired prior to EP Henry filing this suit. Therefore, the burden of proving the elements of laches remains with Cambridge.

### b. Has Cambridge met its burden?

Having held that the burden remains with Cambridge, the next issue for the Court to address is whether Cambridge has adequately shown that EP Henry's delay in filing this suit was both inexcusable and prejudicial to Cambridge. In trying to satisfy the first element — inexcusable delay — Cambridge relies on the same arguments and analysis as it relied on in arguing that the burden should shift to EP Henry. Cambridge again posits that EP Henry knew or should have known about the existence of its claims in no later than 2009 and, thus, EP Henry's 7-year delay in filing suit was inexcusable. However, as discussed above, the Court is not persuaded for purposes of the present Motion for Summary Judgment to hold that EP Henry knew or should have known about these claims prior to January 13, 2011. Cambridge does not argue, nor will the Court hold, that EP Henry's timeline — that is, learning about the claims in 2013 and filing suit in 2017 — would constitute inexcusable delay sufficient to satisfy the first element of laches. Therefore, for the reasons expressed in the previous discussion, the Court holds that Cambridge has not satisfied the first element of the laches defense. The

Court need not address the second element — prejudice — since both elements are required to successfully claim the affirmative defense of laches.

Cambridge has failed to show that, under the summary judgment standard, EP Henry's delay in filing this suit was inexcusable. As this is an essential element of the affirmative defense of laches, the Court will deny Cambridge's Motion for Summary Judgment.

### B. The Parties' Joint Motion to Seal

Having disposed of Cambridge's Motion for Summary Judgment, the Court will next address the parties' Joint Motion to Seal portions of various docket items. Specifically, the parties seek to seal portions from (1) Cambridge's Statement of Material Facts Not in Dispute (Docket Item 63); (2) Declaration of Charles H. Gamarekian (Docket Item 63-1); (3) Exhibit B to the Declaration of Charles H. Gamarekian (Docket Item 63-2); (4) Exhibit 7 to the Declaration of Melissa E. Flax (Docket Item 63-3); (5) Cambridge's Brief in Support of its Motion for Summary Judgment (Docket Item 63-4); (6) Cambridge's Reply Brief (Docket Item 75); (7) Exhibits A, H, and I to the Reply Declaration of Melissa E. Flax (Docket Item 75-1, 75-2, and 75-3); (8) Corrected Declaration of Charles H. Gamarekian (Docket Item 78); and (9) Exhibit B to the Corrected Declaration of Charles H. Gamareikian (Id.).

Local Civil Rule 5.3(c) requires a party moving to seal documents show the following: (1) the nature of the materials or proceedings at issue; (2) the legitimate private or public interests which warrant the relief sought; (3) the clearly defined and serious injury that would result if the relief sought is not granted; and (4) why a less restrictive alternative to the relief sought is not available. L. CIV. R. 5.3(c)(3). While the Court has the authority to restrict public access to information, it has been well

established that a "common law public right of access to judicial proceedings and records" exists. In re Cendant Corp., 260 F.3d 183, 192 (3d Cir. 2001). The parties must overcome this presumption and demonstrate that "good cause" exists for the protection of the materials at issue. Pansy v. Borough of Stroudsburg, 23 F.3d 772, 786 (3d Cir. 1994). For good cause to exist, the parties must make a particularized showing that disclosure will cause a "clearly defined and serious injury." L. Civ. R. 5.3(c)(3)(c); Pansy, 23 F.3d at 786. Good cause is not established when the parties merely provide "broad allegations of harm, unsubstantiated by specific examples or articulated reasoning." Pansy, 23 F.3d at 786 (quoting Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986)). Finally, the serious injury that the parties allege would result from disclosure must be to the parties themselves, not merely to third parties. See Tedesco v. Attorney Gen. of N.J., 2019 U.S. Dist. LEXIS 16977 (D.N.J. Feb. 1, 2019).

The parties claim that the materials at issue constitute "confidential business information," (Docket Item 82-1, ¶ 3), and "proprietary financial information" that is not "publicly available," (Docket item 82-3, ¶ 5). Generally speaking, the parties seek to seal the following types of information: (1) details about Cambridge's advertising and marketing budgets and media through which it pursued its advertising and marketing campaigns; (2) information about the 2009 and 2014 NAD complaints; (3) test results provided to Cambridge by an independent testing company about slipperiness of ArmorTec; and (4) data about EP Henry's year-to-year sales revenues.

As a preliminary matter, the parties seek to seal three documents in their entirety because they allege that the disclosure of those documents would result in "[h]arm to third-parties." (Docket Item 82-2, at 2, 4.) Based on that argument, the Court will not grant the Motion to Seal those documents. See Tedesco, 2019 U.S. Dist. LEXIS 16977.

The Court finds that the remaining information that the parties seek to seal — financial information and proprietary commercial information — constitutes confidential business information and/or trade secrets. See, e.g., Techfields Pharma Co. v. Covance Inc., 2019 U.S. Dist. LEXIS 99488 (D.N.J. June 13, 2019); Impax Labs, Inc. v. Zydus Pharms. (USA) Inc., 2019 U.S. Dist. LEXIS 206044 (D.N.J. Dec. 6, 2018); Cima Labs, Inc. v. Actavis Group HF, 2007 U.S. dist. LEXIS 41516 (D.N.J. June 7, 2007). Furthermore, the parties satisfactorily show that clearly defined and serious injuries would result if the information were disclosed to the public. See, e.g., Techfields Pharma Co., 2019 U.S. Dist. LEXIS 99488. Specifically the parties argue that: (1) "Cambridge could suffer a clearly defined, substantial, irreparable and specific harm, including, but not limited to, financial damage, damage to business relationships, damage to its commercial standing, and/or other irreparable harm if any of the confidential proprietary, commercial, and competitively sensitive business information is publicly disclosed in contravention of the terms of the DCO," (Docket Item 82-1, ¶ 7); (2) "[d]isclosure . . . would cause irreparable harm to Cambridge's business relationships and divulge confidential and proprietary information concerning . . . Cambridge's business practices," (Id. ¶ 8); (3) disclosure "has the potential to harm EP Henry's business and/or competitive position," (Docket Item 82-3, ¶ 5); and (4) "public disclosure of this information would be detrimental" to the parties, (Docket Item 82-4, ¶ 3).

    Therefore, the Court will grant the parties' Joint Motion in part and deny it in part. Specifically, the Court will seal the requested portions of the following documents: (1) Cambridge's Statement of Material Facts Not in Dispute (Docket Item 63); (2) Declaration of Charles H. Gamarekian (Docket Item 63-1); (3) Exhibit 7 to the

Declaration of Melissa E. Flax (Docket Item 63-3); (4) Cambridge's Brief in Support of its Motion for Summary Judgment (Docket Item 63-4); (5) Cambridge's Reply Brief (Docket Item 75); (6) Exhibits H and I to the Reply Declaration of Melissa E. Flax (Docket Items 75-2 and 75-3); and (7) Corrected Declaration of Charles H. Gamarekian (Docket Item 78). However, because the parties' sole argument for sealing the remaining records is that their disclosure would harm third parties, the Court will conditionally deny the parties' Motion with respect to the following records: (1) Exhibit B to the Declaration of Charles H. Gamarekian (Docket Item 63-2); (2) Exhibit A to the Reply Declaration of Melissa E. Flax (Docket Item 75-1); and (3) Exhibit B to the Corrected Declaration of Charles H. Gamareikian (Docket Item 78). The Court will permit the parties to file a renewed Motion to Seal that addresses how the disclosure of those three documents would cause clearly defined and serious injury <u>to the parties themselves</u>.

### III. Conclusion

For the reasons expressed above, the Court will deny Cambridge's Motion for Summary Judgment (Docket Item 62) and grant in part and conditionally deny in part the parties' Joint Motion (Docket Item 82) to Seal. An accompanying Order shall issue.

<u>December 9, 2019</u>                                          <u>s/Joseph H. Rodriguez</u>
Date                                                                             JOSEPH H. RODRIGUEZ
                                                                                      United States District Judge